Gregory D. Phillips (4645)
Jason P. Eves (9094)
PHILLIPS RYTHER & WINCHESTER
124 South 600 East
Salt Lake City, Utah 84102
(801) 935-4935
Attorneys for Plaintiffs

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AUDI AG, a German corporation, and VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>AUDIUP LLC, a Utah limited liability company doing business as REV MOTORING and TIMOTHY ALMOND SEMPLE, an individual,<br><br>Defendants. | **VERIFIED COMPLAINT FOR TRADEMARK COUNTERFEITING AND INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, TRADEMARK DILUTION, AND CYBERPIRACY**<br><br>Civil No.: 2:17-cv-00724-TS<br><br>Judge: Ted Stewart |

Plaintiffs Audi AG and Volkswagen Group of America, Inc. (collectively "Audi" or "Plaintiffs") for their complaint against defendants Audiup LLC, doing business as Rev Motoring, and Timothy Almond Semple (collectively "Defendants"), allege as follows:

## SUBSTANCE OF THE ACTION

1.     This suit arises from Defendants' unauthorized misappropriation and counterfeiting of Audi's distinctive and world-famous trademarks and trade dress. Defendants

feature Audi's trademarks and trade dress in nearly every facet of their business operations, including in their business entity name ("Audiup LLC"), in their Internet domain name *audiup.com*, and in the counterfeit goods they manufacture, and/or import and sell in the United States, and otherwise to convey the false impression that Defendants are associated or affiliated with Audi.

2.     This is an action for trademark counterfeiting, infringement, dilution, and cyberpiracy of Audi's federally-registered and world-famous trademarks, and for related claims based on Defendants' operation of a counterfeiting ring that manufactures, imports, promotes, advertises, distributes, and sells automotive grilles and floor mats bearing counterfeits of Audi's world-famous trademarks, including, but not limited to, the AUDI RINGS®, A4®, Q3®, Q5®, RS 5®, RS 6®, RS 7®, and the AUDI GRILLE TRADE DRESS® trademarks.  Audi alleges claims for federal trademark counterfeiting and infringement, false designation of origin or sponsorship, federal trademark dilution, and cyberpiracy under Sections 32(1), 43(c), 43(a), and 43(d) of the United States Trademark Act of 1946, as amended by the Trademark Counterfeiting Act of 1984 (15 U.S.C § 1116(d)), 15 U.S.C. §§ 1114(1), 1125(a), 1125(c) and 1125(d), (the "Lanham Act").  Audi seeks preliminary and permanent injunctions preventing Defendants from using Plaintiffs' trademarks, and counterfeits thereof, and an order requiring Defendants to deliver all the counterfeit and infringing goods and the means for manufacturing them for destruction, an equitable accounting, an equitable disgorgement of all revenues and/or profits wrongfully obtained, statutory damages, exemplary damages, as well as attorneys' fees and costs.

## THE PARTIES

3.     Audi AG is a corporation organized under the laws of Germany with its principal place of business in Ingolstadt, Germany.

4.      Volkswagen Group of America, Inc. is a New Jersey corporation with its principal place of business in Herndon, Virginia.  Under agreement with Audi AG, Volkswagen Group of America, Inc. polices and enforces Audi AG's trademarks in the United States.

5.      Defendant Audiup LLC is a Utah limited liability company and has registered a DBA with the Utah Department of Commerce for "Rev Motoring" with its principal place of business, a used car sales lot, located at 1535 Major Street, Salt Lake City, Utah.  True and correct copies of Audiup LLC's profile page showing the DBA, printed from the Utah Department of Commerce website and the "contact" web page from *www.revmotoring.com* are attached to the Verified Complaint as Exhibit A.

6.      Defendant Timothy Almond Semple is an individual and principal of Audiup LLC, and is a moving, conscious, and active force behind the infringing acts, and actively participated in and approved the acts of infringement.  Audi believes defendant Timothy Almond Semple resides in Salt Lake City, Utah.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to:

(a)      The International Convention for the Protection of Industrial Property, 13 U.S. Treaties and Other International Agreements (1962), implemented by Sections 39 and 44 of the Lanham Act, 15 U.S.C. §§ 1121 and 1126, and by the Judicial Code, 28 U.S.C. § 1331;

(b)      Section 39 of the Lanham Act, 15 U.S.C. § 1121, giving this Court jurisdiction over all actions arising under the Lanham Act without regard to the amount in controversy;

(c)      Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), relating to the counterfeit, reproduction, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of goods;

(d)      Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a), relating to the use of false designations of origin and/or sponsorship tending falsely to describe or designate the source, and/or sponsorship of goods affecting commerce, and relating to false advertising and trade dress infringement and dilution;

(e)      Sections 43(c) and 43(d) of the Lanham Act, 15 U.S.C., §§1125(c) and (d), relating to dilution and cyberpiracy;

(f)      The Judicial Code, 28 U.S.C. § 1338(b), relating to claims of unfair competition "joined with a substantial and related claim under the ... trademark laws;" and

(g)      The Judicial Code, 28 U.S.C. § 1331, relating to federal question jurisdiction.

8.      Venue is proper under 28 U.S.C. § 1391(b) given that a substantial part of the events giving rise to the claims occurred in this District and because Defendants may be found here.

## GENERAL ALLEGATIONS
### *Plaintiffs' Trademark Rights*

9.      Audi is a world-famous automobile manufacturer that sells Audi automobiles and genuine parts and accessories through a network of licensed Audi dealerships.  In addition to the physical car lots operated by its licensees, Audi also operates various websites, including without limitation *audiusa.com* and *audicollectionusa.com*, through which consumers can purchase genuine Audi parts, automotive accessories and personal goods and accessories directly from

Audi.  Audi's world-famous and distinctive trademarks symbolize the Audi brand and its marketability, reputation and goodwill.

10.  Audi first registered AUDI® as a trademark with the United States Patent and Trademark Office (or "USPTO") in 1960 (U.S. Reg. No. 0,708,352), and has subsequently obtained numerous other registrations for that mark.  A true and correct copy of the registration certificate for Audi's first registration of AUDI® is attached to the Verified Complaint as Exhibit B.  A list of Audi's U.S. trademark registrations for AUDI® and marks that include AUDI® is attached to the Verified Complaint as Exhibit C.  Audi's registrations for the AUDI® mark are valid, unrevoked, subsisting, and incontestable, and constitute *prima facie* evidence of Audi's exclusive ownership of the AUDI® mark.

11.  Audi first registered the AUDI RINGS® trademark (U.S. Reg. No. 0,906,525) with the United States Patent and Trademark Office in 1971, and has subsequently obtained numerous other registrations for that mark.  A true and correct copy of Audi's first AUDI RINGS® trademark is attached to the Verified Complaint as Exhibit D.  A table including all of Audi's live registrations for the AUDI RINGS® and trademarks that include the AUDI RINGS® is attached to the Verified Complaint as Exhibit E.  Audi's registrations for the AUDI RINGS® marks are valid, unrevoked, subsisting, and incontestable, and constitute *prima facie* evidence of Audi's exclusive ownership of the AUDI RINGS® marks.

12.  An image depicting the AUDI RINGS® trademark as used by Audi on and in connection with its goods and services is displayed below for reference:



13.     Additionally, Audi has registered several other trademarks including without limitation, A3®, A4®, A5®, A7®, Q3®, Q5®, QUATTRO®, RS 3®, RS 5®, and RS 7®.  Audi extensively and continuously uses these famous trademarks on advertisements, vehicles, automobile accessories, apparel, and other products to identify the source of Audi's goods and services.  Audi's registrations for these marks are valid, unrevoked, subsisting, and most are incontestable.  Audi's U.S. trademark registrations for these marks constitute *prima facie* evidence of Audi's exclusive ownership thereof.  A table of trademark registrations for these trademarks is attached to the Verified Complaint as Exhibit F.

14.     Likewise, the registered trade dress of the AUDI GRILLE DESIGN® has obtained secondary meaning and was registered as a trademark on the principal register by the USPTO because it was found to have become synonymous with the AUDI® brand.  A true and correct copy of the registration certificate issued by the USPTO for the AUDI GRILLE DESIGN® is attached to the Verified Complaint as Exhibit G.

15.     Audi uses the above-referenced trademarks (collectively the "Audi Marks") to identify its products and services.  In addition to producing high-quality vehicles, Audi produces automotive parts and accessories for its vehicles, including without limitation, all-weather floor mats and vehicle grilles that bear or are in the form of the Audi Marks.  Defendants' counterfeit merchandise competes directly with Audi's genuine goods.  Images depicting some examples of genuine Audi goods are depicted in the table below:



Image depicting Audi's "All-Weather Floor Mats (Rear) – Q3" as displayed online on June 2, 2017, at: http://audicollectionusa.com/Product/All-weather-floor-mats-Rear--Q3-8U0061511A041-30590.htm



Image depicting Audi's "All-Weather Floor Mats (Rear) – Q5" as displayed online on June 2, 2017, at: http://audicollectionusa.com/Product/All-Weather-Floor-Mats-Rear--Q5-8R0061511041-30593.htm



Image depicting Audi's "All-weather floor mats (front) – A4" as displayed online on June 2, 2017, at: http://audicollectionusa.com/Product/All-weather-floor-mats-front--A4-8W1061221041-31121.htm



Image depicting an OEM Audi quattro front grille badge and its genuine packaging.



Image depicting Audi's "Inventory" page prominently displaying the AUDI GRILLE DESIGN® and AUDI RINGS® online on June 2, 2017, at: https://www.audiusa.com/inventory



Image depicting an OEM Audi Grille as it appeared online on June 8, 2017, at: http://www.2017audiusa.com/2017-audi-rs4-sedan/



Image depicting an Audi A3® vehicle, prominently displaying the AUDI GRILLE DESIGN®, viewable online at: http://www.audi.com/en/models/a3.html



Image depicting an Audi Q3 vehicle, prominently displaying the AUDI GRILLE DESIGN®, as it appeared online on June 8, 2017, at: http://www.audi.com/en/models/q3.html

16. Audi has spent hundreds of millions of dollars and has expended significant effort in advertising, promoting and developing its trademarks and trade dress, including without limitation the famous and distinctive AUDI RINGS® and AUDI GRILLE DESIGN®, throughout the world.  As a result of such advertising and expenditures, Audi has established considerable goodwill in its trademarks and trade dress.  The Audi Marks have become widely known and recognized throughout the world as symbols of high quality automotive goods and services.   The Audi Marks are world-famous and distinctive, and have become associated by the consuming public exclusively with Audi.  The Audi Marks are an invaluable asset of substantial and inestimable worth to Audi.

*Defendants' Violations of the Audi Marks*

17. After Audi's development, use, and registration of the Audi Marks and without Audi's consent, defendant Timothy Almond Semple ("Defendant Semple") registered the domain name *audiup.com*, which incorporates the world-famous AUDI® trademark.  Attached as Exhibit H is a printout of the WhoIs record for *audiup.com*, showing Defendant Semple as the

registrant and the creation date of this domain name.  Defendants still use *audiup.com* to direct Internet traffic to their e-commerce website at *www.revmotoring.com*.

18.     In addition, Defendants registered "Audiup LLC" as their business name, a name that prominently incorporates the AUDI® trademark.  *See* Exhibit A.

19.     Sometime after registration of the domain name and business name, Defendants also began using counterfeits of the Audi Marks, or confusingly similar versions of them, on and in connection with the sale of unauthorized, aftermarket goods for Audi vehicles and their owners.  As shown in the following side-by-side comparison, Defendants have in the past, and continue in the present, to import, manufacture, advertise, and sell goods that incorporate counterfeits, copies, and/or colorable imitations of the Audi Marks.



| Defendants' Counterfeit Products | Genuine Audi Products |
| --- | --- |

| Defendants' Counterfeit Products | Genuine Audi Products |
| --- | --- |



| Defendants' Counterfeit Products | Genuine Audi Products |
|---|---|
|  | |

20.     In March 2017, plaintiff Volkswagen Group of America, Inc. was informed that Defendants were suspected of operating a counterfeiting ring and importing and selling counterfeit parts and accessories bearing Audi's trademarks and trade dress in the United States. Plaintiff Volkswagen Group of America, Inc. began an investigation of Defendants at that time.

21.     In May 2017, United States Customs and Border Protection seized 190 counterfeit Audi Grilles being shipped from a Chinese manufacturer to Defendants and provided evidence of the seizure to Volkswagen Group of America, including images of the seized goods and contact information for Defendants.

22.     Volkswagen Group of America has learned that Defendants have, without authorization from Audi, used AUDI® in Defendants' business name and Internet domain name, and have manufactured, or caused to be manufactured, a variety of automotive parts and accessories for Audi vehicles that incorporate the Audi Marks and/or counterfeits thereof. Defendants import these automotive accessories into the United States to be installed on used Audi vehicles sold by Defendants.  Upon information and belief, Defendants use counterfeits of the Audi Marks to wrongfully designate a base model Audi vehicle as one of Audi's sport version models.

23.     Defendants operate an Internet website at *www.revmotoring.com* and use *audiup.com* to direct traffic to Defendants' e-commerce website there.  Defendants also maintain

eBay and Amazon online storefronts where they advertise and sell goods incorporating and in the form of counterfeits of the Audi Marks, including unauthorized, counterfeit versions of Audi's trademarked badging and nameplates so that Audi vehicle owners can install them on models of Audi vehicles with trim packages that may or may not be the equivalent of those indicated by the trademarked badges.  True and correct copies of several pages from Defendants' website, eBay storefront and Amazon storefront advertising the counterfeit goods bearing and in the form of the Audi Marks are attached to the Verified Complaint as Exhibits I-1 through I-14.

24.     In June 2017, plaintiff Volkswagen Group of America, Inc. ordered a trunk mat for an Audi A4 vehicle from Defendants' website at *www.revmotoring.com*.    A copy of the shipping label for the trunk mat purchased from Defendants' with the recipient's information redacted, demonstrating that the counterfeit goods were shipped from Defendants' address in Salt Lake City, Utah is attached hereto as Exhibit J.

25.     Images depicting Defendants' counterfeit trunk mat purchased by plaintiff Volkswagen Group of America, Inc., incorporating the A4® trademark, are set forth below:





26.     In June 2017, plaintiff Volkswagen Group of America, Inc. also purchased one of Defendants' counterfeit Audi A5 Grilles from Defendants' Amazon storefront.  Defendants shipped the grille to Volkswagen Group of America, Inc. on the same day.  A copy of the shipping label with the recipient's information redacted therefrom, demonstrating that the counterfeit goods were shipped from Defendants' address in Salt Lake City, Utah is attached hereto as Exhibit K.  Images depicting Defendants' knockoff grille purchased by Volkswagen Group of America, Inc., including counterfeit AUDI RINGS® and RS 5® badges are set forth below:



27.     Plaintiff Volkswagen Group of America, Inc. has inspected the goods sold by

Defendants and has determined that they are counterfeit.  Defendants' counterfeit goods are

cheap imitations of Audi's genuine parts and accessories.

28.     Defendants are in no way affiliated with, authorized by, or sponsored by Audi and

have no authority to use the Audi Marks to identify the goods and services that they advertise,

promote, or sell.

29.     Defendants' use of the Audi Marks in their business name, domain name, and in

conjunction with the manufacture, importation, advertisement, promotion, and sale of their

unauthorized products bearing or in the form of the Audi Marks constitutes a misappropriation of

the Audi Marks, and is likely to cause potential purchasers of Defendants' products and services, as well as the public at large, to believe that Defendants' products are affiliated with, authorized, sponsored or endorsed by Audi.   In addition, Defendants' wrongful use of the Audi Marks or confusingly similar versions thereof, dilutes, tarnishes, and whittles away the distinctiveness of the Audi Marks.

30.     Defendants continue to use the Audi Marks and/or intentionally similar versions thereof with actual knowledge of Audi's prior adoption and use of the Audi Marks.  Defendants have carried out and continue to carry out such acts with the intent to mislead and deceive consumers and the public in general.  In so doing, Defendants have caused irreparable damage to the Audi Marks and to the goodwill and reputation of Audi.

31.     Audi exercises great care and exerts substantial effort to control the nature and quality of the genuine goods and services offered under the Audi Marks.

32.     Defendants are not subject to Audi's quality control specifications, and do not pay royalties to Audi.

33.     Defendants' unauthorized use of the Audi Marks, or confusingly similar versions thereof, is likely to cause confusion as to the source and/or sponsorship of Defendants' products and services.  In addition, Defendants' unauthorized use of the Audi Marks as alleged above dilutes, blurs the distinctiveness of, and tarnishes the Audi Marks.

34.     Defendants' conduct is intentionally fraudulent, malicious, willful, and wanton. Indeed, on September 3, 2013, Defendant Timothy Almond Semple made a blog post, viewable online at *https://timothysemple.wordpress.com/* (last visited on June 20, 2017), in which he acknowledges Audi's trademark rights and indicates that Defendants use the DBA "Rev Motoring" to avoid receiving a "cease and desist order" from Audi.  A printout of Defendant Semple's blog post is attached to the Verified Complaint as Exhibit L.

35.     Defendants' willful conduct is also demonstrated by their website's "about" page, found online at *http://www.revmotoring.com/about/*, whereon Defendants' tout Defendant Semple as "a Audi/VW mechanic" and affirmatively stating "[w]e are also a parts manufacturer so we can include the upgrades at a discounted rate factored into the price listed."  A copy of Defendants' "about" web page is attached to the Verified Complaint as Exhibit M.

36.     Based on experience, Audi is informed and believes that unless this Court enters a preliminary and permanent injunction in this case, Defendants will simply dispose of the counterfeit goods bearing the Audi Marks and all evidence relating to the manufacture, importation, advertisement, and sale of the counterfeit goods, and will disclaim any knowledge of the persons from whom they bought and to whom they sold such counterfeit goods.

### FIRST CLAIM FOR RELIEF
(FEDERAL TRADEMARK COUNTERFEITING
AND INFRINGEMENT, 15 U.S.C. § 1114)

37.     Audi realleges and incorporates herein the allegations above.

38.     Despite Audi's well-known prior rights in the Audi Marks, Defendants have used and continue to use, without Audi's authorization, the Audi Marks, or confusingly similar variations and imitations thereof, in connection with the advertisement, promotion, and sale of Defendants' counterfeit products and services.

39.     Defendants' use of the Audi Marks is likely to cause consumer confusion as to whether Audi endorses, sponsors, or licenses Defendants' products, or as to whether Defendants are somehow affiliated with Audi.

40.     Defendants' actions constitute trademark counterfeiting and willful infringement of Audi's exclusive rights in the Audi Marks in violation of 15 U.S.C. § 1114.

41.     Defendants' use of the Audi Marks, or confusingly similar variations thereof, has been and continues to be done with the intent to cause confusion, mistake, and to deceive consumers regarding the source and/or sponsorship of Defendants' products and services. Defendants have used counterfeits of the Audi Marks in connection with their products with the knowledge that the marks are counterfeits and with the intent to use counterfeits. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

42.     As a direct and proximate result of Defendants' conduct, Audi has suffered irreparable harm to the valuable, distinctive and world-famous Audi Marks. Unless Defendants are restrained from further infringement of the Audi Marks, Audi will continue to be irreparably harmed.

43.     Audi have no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue.

44.     As a direct and proximate result of Defendants' conduct, Audi is entitled to the equitable remedy of an accounting for, and a disgorgement of, all revenues and/or profits wrongfully derived by Defendants from their infringing and diluting use of the Audi Marks pursuant to 15 U.S.C. § 1117. Alternatively, Audi is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $500 and up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed.

## SECOND CLAIM FOR RELIEF
### (FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP AND FALSE ADVERTISING, 15 U.S.C. § 1125(a))

45.     Audi realleges and incorporates herein the allegations above.

46.     Defendants have knowingly used the Audi Marks, or confusingly similar variations thereof in connection with the products and services that Defendants manufacture,

import, advertise, promote, and sell.  Defendants' actions render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

47.     Defendants use the Audi Marks, counterfeits and/or confusingly similar variations thereof in the business entity name, to wit, "Audiup LLC," in their domain name *audiup.com*, and in the goods they manufacture, import and sell to consumers in the United States.

48.     Defendants' use of the Audi Marks is likely to confuse, mislead or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants' services and products, and is likely to cause such people to believe in error that Defendants' products and services have been authorized, sponsored, approved, endorsed, or licensed by Audi or that Defendants are in some way affiliated with Audi.

49.     Defendants' acts constitute false or misleading descriptions, false advertising, and false designations of the origin and/or sponsorship of Defendants' goods in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

50.     Because of Defendants' actions, Audi has suffered irreparable harm to the Audi Marks.  Unless Defendants are enjoined from their actions, Audi will continue to be irreparably harmed.

51.     Audi has no remedy at law that will compensate for the continued and irreparable harm that will be caused if Defendants' acts are allowed to continue.

52.     As a direct and proximate result of Defendants' conduct, Audi is entitled to the equitable remedy of a preliminary injunction, a permanent injunction, an accounting for, and a disgorgement of, all revenues and/or profits wrongfully derived by Defendants from their infringing and diluting use of the Audi Marks pursuant to 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF
### (TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c))

53.     Audi realleges and incorporates herein the allegations above.

54.     The Audi Marks have become famous and distinctive worldwide through Plaintiffs' continuous and exclusive use of them in connection with Audi's products and services.

55.     Because Audi's products and services have gained a reputation for superior quality, durability, and performance, the Audi Marks have gained substantial renown.

56.     Defendants have willfully and intentionally used and continue to use the Audi Marks or confusingly similar variations thereof in connection with the advertisement, promotion, and sale of Defendants' products and services.

57.     Defendants' use of the Audi Marks, and confusingly similar variations thereof, has caused and continues to cause irreparable injury to and actual dilution of the Audi Marks' distinctive quality in violation of Audi's rights under 15 U.S.C. § 1125(c).  Defendants' wrongful use of the Audi Marks dilutes, blurs, tarnishes, and whittles away the distinctiveness of the Audi Marks.

58.     Defendants have used and continue to use the Audi Marks, and confusingly similar variations thereof, willfully and with the intent to dilute the Audi Marks, and with the intent to trade on Audi's reputation and the goodwill inherent in the Audi Marks.

59.     As a direct and proximate result of Defendants' conduct, Audi has suffered irreparable harm to the Audi Marks.

60.     Unless Defendants are enjoined, the Audi Marks will continue to be irreparably harmed and diluted.  Audi has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' actions are allowed to continue.

61.     Defendants have used and continue to use the Audi Marks, or counterfeits thereof, willfully, with the intent to dilute the Audi Marks and trade on Audi's reputation and goodwill. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1111(a).

62.     As a direct and proximate result of Defendants' conduct, Audi is entitled to the equitable remedy of an accounting for, and a disgorgement of, all revenues and/or profits wrongfully derived by Defendants from their infringing and diluting use of the Audi Marks pursuant to 15 U.S.C. § 1117.

**FORTH CLAIM FOR RELIEF**
(CYBERPIRACY UNDER THE ANTICYBERSQUATTING
CONSUMER PROTECTION ACT OR "ACPA", 15 U.S.C. § 1125(d))

63.     The allegations set forth above are incorporated herein by this reference.

64.     Defendants have registered and commercially used the Internet domain name *audiup.com* that is identical, confusing similar to, and/or dilutive of the distinctive and famous AUDI® trademark.

65.     AUDI® was distinctive and famous decades before the registration of *audiup.com*.

66.     Defendants will continue to use *audiup.com* in commerce to forward Internet traffic to their commercial website located online at *www.revmotoring.com*.  Defendants' misappropriation of the Audi Marks in the domain name *audiup.com* will continue to cause irreparable injury to Audi and the public unless Defendants are restrained and enjoined.

67.     Audi has no adequate remedy at law that will compensate for the continued and irreparable harm that will be caused if Defendants' acts of cyberpiracy continue.

68.     Audi is entitled to an injunction, requiring the transfer *audiup.com* to Audi.

69.     In addition, Audi is entitled to damages, including statutory damages under the ACPA in the amount of $100,000 per domain name, in addition to its costs and attorney fees in bringing this action.

**PRAYER FOR RELIEF**

WHEREFORE, Audi prays for judgment against Defendants as follows:

1.     Under all claims for relief, that a preliminary and permanent injunction be issued enjoining Defendants, their employees, agents, successors and assigns, and all those in active concert and participation with Defendants, and each of them who receives notice directly or otherwise of such injunctions, from:

(a)     imitating, copying, or making unauthorized use of any of the Audi Marks, counterfeits thereof, or any confusingly similar variations thereof;

(b)     importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any service or product using any simulation, reproduction, counterfeit, copy, or any confusingly similar variation of any of the Audi Marks;

(c)     using any simulation, reproduction, counterfeit, copy or confusingly similar variation of the Audi Marks or trade dress in Defendants' business name or in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any service or product;

(d)     using any false designation of origin or false description, including without limitation, any letters or symbols constituting the Audi Marks or trade dress, or performing any act, which can, or is likely to lead members of the trade or public to believe that Defendants and/or any service or product manufactured, distributed or sold by Defendants is in any manner associated or connected with Audi, or is sold, manufactured, licensed, sponsored, approved or authorized by Audi;

21

(e)      transferring, consigning, selling, shipping or otherwise moving any goods, packaging or other materials in Defendants' possession, custody or control bearing a design or mark substantially similar to any or all of the Audi Marks;

(f)      engaging in any other activity constituting unfair competition with Audi with respect to the Audi Marks, or constituting an infringement of any or all of the Audi Marks, or of Audi's rights in, or to use or exploit, any or all of the Audi Marks or trade dress;

(g)      registering, trafficking in, or using any domain names incorporating the Audi Marks, or any confusingly similar variations thereof; and

(h)      instructing, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (g) above.

2.      Under all claims for relief, for an order enjoining Defendants from selling, distributing, discarding, giving away or otherwise disposing of Defendants' goods bearing counterfeits of the Audi Marks, and requiring Defendants to sequester said counterfeit goods, including without limitation, any grilles, automobile badges, floor mats, trunk mats, or other goods bearing the Audi Marks as described in this Verified Complaint in a separate and safe location at Defendants' place or places of business, as well as all business records related thereto, including any computers or other digital media containing such business records to be made available for Audi and its representatives to examine, photograph, and/or copy any such goods and information;

3.      For an order directing Defendants to deliver to Audi and its counsel for destruction all products, labels, tags, signs, prints, packages, videos, and advertisements in their possession or under their control, bearing or using any or all of the Audi Marks or any

confusingly similar variation thereof, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118.

4.      For an order requiring Defendants to change their trade name and/or business entity name from "Audiup LLC" to another name that does not include or incorporate the Audi Marks or any confusingly similar versions thereof.

5.      For an order directing such other relief as the Court may deem appropriate to prevent consumers and public in general from deriving the erroneous impression that any service or product manufactured, sold or otherwise circulated or promoted by Defendants is authorized by Audi or related in any way to Audi's products or services.

6.      For an order directing Defendants to file with the Court and serve upon Audi's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the above.

7.      For an order permitting Audi, and/or auditors for Audi, to audit and inspect the books and records of Defendants for a period of six months after entry of final relief in this matter to determine the scope of Defendants' past use of the Audi Marks, including all revenues and sales related to Defendants' use of the Audi Marks, as well as Defendants' compliance with orders of this Court.

8.      For an award of Audi's costs and disbursements incurred in this action, including Audi's reasonable attorneys' fees under 15 U.S.C. § 1117(a).

9.      For an order requiring Defendants to file with the Court and provide to Audi an accounting of all sales and profits realized through Defendants' use of the Audi Marks and any counterfeits thereof.

10.     For judgment in an amount equivalent to three times Defendants' profits and reasonable attorneys' fees because of Defendants' intentional, willful and knowing use of counterfeits of the Audi Marks pursuant to 15 U.S.C. § 1117(b).

11.     Alternatively, for an award of statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed.

12.     For an order pursuant to 15 U.S.C. § 1125(d)(1)(C), requiring Defendants to transfer the domain name *audiup.com*, and any other domain names within their possession or control that incorporate the Audi Marks, to Audi.

13.     For an award of statutory damages pursuant to 15 U.S.C. § 1117(d) of not less than $1,000 and up to $100,000 per domain name registered by Defendants and incorporating the Audi Marks.

14.     For an award of interest, including pre-judgment interest on the foregoing sums.

15.     For such other and further relief as the Court may deem just and proper.

DATED this 30th day of June, 2017.

PHILLIPS, RYTHER & WINCHESTER


/s/ Gregory D. Phillips
Gregory D. Phillips
Attorneys for Plaintiffs

**VERIFICATION**

Dana A. Cizmadia, under penalty of perjury of the laws of the United States declares:

That she is employed by Volkswagen Group of America, Inc. as Compliance Specialist, Brand Protection and Marketing; that she has read, is familiar with, and has personal knowledge of the contents of the foregoing Verified Complaint; and that the allegations thereof are true and correct or, to the extent that matters are not within her personal knowledge, that the facts stated therein have been assembled by authorized personnel, including counsel, and that she is informed that the facts stated therein are true and correct.

Executed this 30th day of June 2017 in Herndon, Virginia.

Dana A. Cizmadia